```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                             :
THE UNIVERSITY OF PITTSBURGH,                                :
                                                             :
                                    Plaintiff,               :
                                                             :
              -v-                                            :      13-cv-335 (KBF)
                                                             :
LEXINGTON INSURANCE COMPANY; and                             :      OPINION & ORDER
AXIS INSURANCE COMPANY,                                      :
                                                             :
                                    Defendants.              :
                                                             :
------------------------------------------------------------ X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: July 21, 2016

KATHERINE B. FORREST, District Judge:

This is a coverage dispute between the University of Pittsburgh ("Pitt") as plaintiff and two insurance companies, Lexington Insurance Company ("Lexington") and Axis Insurance Company. Before the Court is Pitt's motion for partial summary judgment against Lexington and Lexington's motion to stay the proceedings before this Court pending an appeal. (ECF Nos. 74 & 78.) In short, Pitt seeks a determination by this Court that the insured, The Ballinger Company ("Ballinger"),[1] an architectural firm working for Pitt in connection with a construction project, provided adequate notice to Lexington under the relevant insurance policy, while Lexington seeks a ruling that the Court is either without jurisdiction to consider such a motion or should, in its discretion, elect not to consider it. As discussed below, based on the undisputed record before this Court as

---

[1] Pitt was granted permission to substitute as plaintiff in the Court's memorandum decision and order of April 21, 2016. (ECF No. 58.)

to the requirements of the insurance contract and the notice provided and based on the parties arguments regarding stays during appeals, both motions are DENIED.

I.  THE INSURANCE CONTRACT

The Lexington Policy (the "Policy") is a claims-made policy covering the period from February 1, 2011 to February 1, 2012.  (Breene Decl.[2] Exh. D at 1.)  The Policy "applies to only those claims that are first made against the Insured and reported to the Company during the policy period," and defines a claim as "any demand received by an Insured seeking Damages and alleging liability or responsibility on the part of the Insured or persons for whose conduct the Insured is legally liable."  (Id. at 1 & § III.D.)  "Damages" is defined as "any amount which an Insured is legally obligated to pay for any Claim to which this insurance applies."  (Id. at § III.G.)  "Professional Services" is defined as "those services that the Insured is legally qualified to perform for others in their capacity as an architect" or otherwise.  (Id. at § III.P.)

The Policy contains specific reporting provisions in the event of a claim.  The section entitled Reporting of a Potential Claim provides:

> If the Insured first becomes aware during the Policy Period of an actual or alleged Breach of Professional Duty or circumstances arising out of Professional Services which is reasonably likely to result in a Claim, the Insured may give written notice to the Company containing the information listed below.

(Id. § V.B.)  As a condition precedent to coverage, the Policy requires that the written notice contain

---

[2] ECF No. 77.

  1. The actual or alleged Breach of Professional Duty or circumstance which is the subject of a potential Claim;

  2. A description of the Professional services rendered by the Insured which may result in the Claim;

  3. The date(s) of such conduct which may result in the Claim; and

  4. A description of the injury or damage that has or may result in a Claim.

  5. The identities and address of any potential claimant(s);

  6. The anticipated location(s) of any such potential Claim;

  7. The circumstances by which the Insured first became aware of the potential Claim.

(Id.)

II. THE NOTICE AND DENIAL

On the last day of the coverage period, January 31, 2012, Ballinger submitted an industry-standard Acord General Liability Notice of Occurrence/Claim (the "Notice") to Lexington. (Breene Decl. Exh. G.) The Notice lists the Location of Occurrence as "University of Pittsburgh Salk Hall, Pittsburg[h], PA." (Id.) In the field for the Description of the Occurrence, the Notice states, in its entirety, "Senior management has been advised by University of Pittsburg[h] that this project is experiencing problems and delays in its early stages." (Id.) The date of the occurrence is indicated as January 31, 2012. (Id.)

A liability claims examiner from Lexington contacted Ballinger for more information but did not receive any. Then, in a letter dated March 5, 2012, Lexington denied coverage for the potential claim identified in the Notice. (Breene Decl. Exh. H.) Lexington's letter identified four absences from the Notice:

3

>(1) the actual or alleged Breach of Professional Duty or circumstances which is the subject of a potential Claim; (2) a description of the Professional Services rendered which may result in the Claim; (3) the date(s) of such conduct which may result in the Claim; and (4) a description of the injury or damage that has or may result in a Claim.

(Id. at 3.) Lexington further noted that it "deems this notice inadequate, and hereby notifies Ballinger that any claim made in relation to the Project will not be deemed to have been made during the Policy period." (Id.)

On October 31, 2012, Pitt sent a letter to Ballinger in which it identified errors and omissions in connection with the Salk Hall Project. (Breene Decl. Exh. I.) Thereafter, Pitt initiated a lawsuit against Ballinger in Pennsylvania state court. (Breene Decl. Exh. K.)

III.  LEGAL PRINCIPLES

   A.  Summary Judgment Standard

Summary judgment may not be granted unless a movant shows, based on admissible evidence in the record, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating "the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On summary judgment, the Court must "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor." Dickerson v. Napolitano, 604 F.3d 732, 740 (2d Cir. 2010). The Court's function on summary judgment is to determine whether there exist any

4

genuine issues of material fact to be tried, not to resolve any factual disputes. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).

      B.     Insurance Policy Interpretation

Insurance policies are a form of contract. Under Pennsylvania law, which the parties agree governs the Policy, "the insured has the burden to prove that a particular claim falls within the coverage of a policy." Pizzini v. Am. Int'l Specialty Lines Ins. Co., 210 F. Supp. 2d 658, 667 (E.D. Pa. 2002) (citing Jacobs Constructors, Inc. v. NPS Energy Servs., Inc., 264 F.3d 365, 376 (3d Cir. 2001)).

Pennsylvania law provides that "[i]n construing an insurance policy, unambiguous terms are to be given their plain and ordinary meaning." St. Paul Fire & Marine Ins. Co. v. Lewis, 935 F.2d 1428, 1431 (3d Cir. 1991) (internal quotation marks omitted). Ambiguous terms are to be construed strictly against the insurer, and whether or not a term is ambiguous is a question of law. Id. A term is ambiguous "if, and only if, it is reasonably or fairly susceptible of different constructions and is capable of being understood in more senses than one and is obscure in meaning through indefiniteness of expression or has double meaning.… [A] contract is not rendered ambiguous by the mere fact that the parties do not agree on the proper construction." Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc., 247 F.3d 79, 93 (3d Cir. 2001) (quoting Duquesne Light Co. v. Westinghouse Elec. Corp., 66 F.3d 604, 614 (3d Cir. 1995)).

### C. Claims-Made Insurance Policies

"The nature of a claims-made policy is that it protects the insured for claims made against it and reported to the insurer within the policy period or, if applicable, the extended reporting period." Checkrite Ltd. v. Ill. Nat. Ins. Co., 95 F. Supp. 180, 191 (S.D.N.Y. 2000). "This is in contrast to an 'occurrence' policy, which protects the insured from liability for acts committed during the policy period regardless of when claims arise based on those acts." Id.

Under Pennsylvania law, "[f]ailure to comply with the reporting provision of a 'claims made' policy precludes coverage. Although a harsh consequence, 'claims made' policies, and their reporting provisions, are enforceable." Pizzini, 210 F. Supp. 2d at 668. In contrast, notice provisions in occurrence-based insurance policies "do not define coverage and should be liberally and practically construed." Am. Cas. Co. of Reading, Pa. v. Continisio, 17 F.3d 62, 68 (3d Cir. 1994) (internal quotation marks omitted).

In the claims-made context, when the insured has breached the notice requirement, an insurer need not show prejudice to deny coverage. ACE Am. Ins. Co. v Underwriters at Lloyds and Cos., 939 A.2d 935, 941 (Pa. Super. Ct. 2007).

## IV. DISCUSSION

### A. Compliance With The Notice Requirements

The policy language at issue here is clear and unambiguous. Certain information is required in a written notice as a condition precedent to coverage. The question for the Court on Pitt's motion for summary judgment is whether

6

Ballinger's Notice of January 31, 2012 provided the required information.  Plainly it did not.

The Notice is perfunctory.  It does not, as required, provide any indication of the actual or alleged breach of any professional duty; it does not, as required, provide a description of the Professional Services rendered which may result in a Claim; and it does not, as required, provide a description of the injury or damage that has or may result in a Claim.

Indeed, the entire description of the Claim is that "this project is experiencing problems and delays in its early stages."  This statement is entirely non-specific – it is merely a placeholder.  "It does not identify an alleged act, error, or omission by [Ballinger], or any professional services [Ballinger] provided to a potential claimant for a fee."  Sys. & Computer Tech. Corp. v. Columbia Cas. Co., Civil Action No. 06-1663, 2007 WL 122117, at *9 (E.D. Pa. April 25, 2007).  It could mean just about anything.  The Policy requires that the insured – Ballinger – provide more than a simple statement conveying that there is "trouble brewing at Pittsburgh." (SOF ¶ 57.)  That requirement is enforceable and will be enforced.

As the Notice is plainly deficient on its face, Pitt's request for a determination that it was adequate and triggered Lexington's obligations under the Policy must fail.

B.  The Motion For A Stay

Lexington's motion to stay the proceedings pending its interlocutory appeal is denied for the reasons set forth in Pitt's opposition to that motion.  (ECF No. 86.)

7

V.      CONCLUSION

For the reasons set forth above, Pitt's motion for partial summary judgment against Lexington and Lexington's motion for a stay are both DENIED.  (ECF Nos. 74 & 78.)  The Court invites a dispositive motion for summary judgment from Lexington.


        SO ORDERED.

Dated:      New York, New York
            July 21, 2016

                                        _____
                                             KATHERINE B. FORREST
                                             United States District Judge