UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- X
                                                                  :
THE UNIVERSITY OF PITTSBURGH,                                     :
                                                                  :
                                        Plaintiff,               :
                                                                  :
                        -v-                                       :
                                                                  :
LEXINGTON INSURANCE COMPANY; and                                 :
AXIS INSURANCE COMPANY,                                          :
                                                                  :
                                        Defendants.              :
                                                                  :
---------------------------------------------------------------- X

| USDC SDNY |
| DOCUMENT |
| ELECTRONICALLY FILED |
| DOC #: _____ |
| DATE FILED: December 8, 2016 |

13-cv-335 (KBF)

OPINION & ORDER

KATHERINE B. FORREST, District Judge:

        This is an insurance-coverage action between the University of Pittsburgh

("Pitt") as plaintiff and two insurance carriers, Lexington Insurance Company

("Lexington") and Axis Insurance Company ("AXIS").[1]  The dispute arose from

problems encountered during a construction project at Pitt's Salk Hall (the "Salk

Hall Project"), for which the university had engaged Ballinger as its designer and

architect.  When these problems resulted in a claim against Ballinger by Pitt,

Ballinger attempted to invoke its professional-liability insurance coverage under

policies it held with Lexington and AXIS.  (Def. Rule 56.1 Statement of Undisputed

Material Facts ("Def. 56.1") ¶ 1, ECF No. 113.)  Both insurers denied coverage.  This

litigation ensued when Ballinger sought a declaratory judgment that either

---

[1] Ballinger as assigned its claims against Lexington and AXIS to Pitt.  (Def. 56.1 ¶ 3.)  Pitt was
granted permission to substitute as plaintiff in the Court's memorandum decision and order of April
21, 2016.  (ECF No. 58.)

Lexington or AXIS was required to defend and indemnify it against Pitt's claims. (Id.)

On September 16, 2016, the Court found for Lexington on summary judgment, holding that the notice of claim Ballinger submitted to Lexington was insufficient to trigger coverage under the Lexington policy's contractual terms. Univ. of Pittsburgh v. Lexington Ins. Co., 2016 WL 4991622 (S.D.N.Y. Sept. 16, 2016), ECF No. 108.  AXIS has moved for summary judgement on the only remaining question in this case: whether, under the contractual terms of Ballinger's professional-liability policy, AXIS is required to defend and indemnify Ballinger for Pitt's claims arising from the Salk Hall Project.  (ECF No. 119.)

For the reasons set forth below, the Court concludes AXIS does not have such an obligation.  Its motion is therefore GRANTED.

I.    FACTUAL BACKGROUND

The facts underlying this dispute are discussed in the Court's previous decisions in this matter and will not be repeated except to provide background on the AXIS insurance policy and communication between Ballinger and AXIS.  (See ECF Nos. 96, 108.)  The following facts are undisputed.

Ballinger, the original plaintiff in this action, held a professional-liability insurance policy with Lexington covering the period of February 1, 2011, to February 1, 2012.  (Def. Rule 56.1 ¶ 1.)  In February 2012, Ballinger switched its professional liability policy to AXIS (the "AXIS Policy"), which began coverage simultaneously with the termination of Lexington's coverage at 12:01 a.m. on

February 1, 2012.  (Def. 56.1 ¶ 6, 11.)  Both the Lexington and AXIS policies were claims-made policies.  (Pl. Rule 56.1 Statement of Undisputed Material Facts ("Pl. 56.1") ¶ 40, ECF No. 125.)

In its "Coverage" section, the AXIS Policy provided that "[t]his insurance policy applies only when prior to the effective date of the first policy issued to you and continuously renewed by us, no principal, partner, director, executive officer, or any person whose signature appears on any application of yours had knowledge of any act, error, omission, situation or event that could reasonably be expected to result in a Claim."  (Id. ¶ 12.)

In 2011, construction began on the Salk Hall Project for which Pitt had contracted with Ballinger as its design and architecture firm.  (Id. ¶ 25.)  In previous filings in this matter, Pitt stated that Ballinger became aware of problems with the Salk Hall Project soon after construction began, and that "Ballinger knew, during the Lexington policy period, of circumstances arising from its Professional Services at the Salk Hall Project that were reasonably likely to result in a claim being filed against it."  (ECF No. 93 at 3.); (see also Peiper Dec. Ex B (email correspondence from August 2011 between Pitt employees and a Ballinger principal discussing Pitt's "delay" concerns).)  "By January 2012," Pitt has stated, "senior executives at Ballinger knew that the Salk Hall Project was progressing more slowly than had been anticipated[,]" that "a subcontractor had made statements that, in the experience and judgment of Ballinger's executives, suggested that the contractor could well assert a claim against Pitt[,]" and that "Ballinger was aware

3

that Pitt, in turn, could assert that claim or a variant of it against Ballinger." (ECF No. 104 at 9-10).

On January 31, 2012, Ballinger submitted a Notice of Occurrence/Claim to Lexington stating that there were "circumstances arising from its Professional Services at the Salk Hall Project that were reasonably likely to result in a claim being filed against [Ballinger]." (Id. ¶ 10.) Jeffrey French, a principal at Ballinger, (Peiper Aff. Ex. K at 13, ECF No. 111-11 at 4), sent an email the same day stating that "this project is already experiencing significant delays" and that "a future delay claim is inevitable." (Id. at 95.) French testified that he made this statement because, inter alia, "it was quite likely that a delay claim could come from someone against someone," and he "felt that somewhere in here there was likely to be a claim asserted by the contractor against the owner or the owner against the contractor. And my experience is, you know, if that were to happen, it's quite possible that the architect could get dragged into that." (Id. at 98-99.)

French also testified that as of January 31, 2012, Ballinger knew Pitt "did not have confidence in the grouting system that [Ballinger] had recommended," that French "had a suspicion that asking [Ballinger] to redesign the foundation system could lead to a delay claim[,]" and that he "thought it was [] quite likely that some kind of delay claim would be made." (Id. at 101.) Although French testified he did not know "by whom or against whom [the claim] would come," he also testified that when there is the possibility . . . of a claim, . . . full disclosure [to the insurance company] is our obligation and responsibility, so we did [disclose]." (Id. at 103; see

<u>also</u> <u>id.</u> at 107 ("My understanding is that our obligation was that we should disclose if it seemed likely that claims might grow out of a project and there was a possibility that we might get dragged into it, and this clearly had [] the potential, based . . . on both some decisions the owner made and the decisions the contractor had made . . . that I thought it was quite possible that there would be a claim in here somewhere.").)

On March 5, 2012, Lexington refused to defend and indemnify Ballinger for any claims arising from the Salk Hall Project due to insufficient information in Ballinger's notice of claim.  (Def. 56.1 ¶ 32.)  Ballinger then notified AXIS on March 27, 2012, that "the insured feels strongly that a claim will be filed against it in this instance.  As you will note, this matter has been previously been reported to Lexington, and they denied for the reasons set forth in the March 5, 2012 letter." (<u>Id.</u> at ¶ 33.)  On April 10, 2012, AXIS notified Ballinger that "notice was given to another design professional insurer prior to the Inception Date of this AXIS Policy" and "there is no coverage available to The Ballinger Company for any claims arising out of, related to or connected with the University of Pittsburgh (Salk Hall) project and AXIS will neither defend The Ballinger Company for any such claim that has or may be made against it."  (Peiper Aff. Ex. J. at 4, ECF No. 111-10 at 4.)

On October 31, 2012, Pitt sent a letter to Ballinger identifying errors and omissions at the Salk Hall Project and notifying Ballinger that it sought damages arising from problems with, <u>inter alia</u>, "Hillside Stabilization" and "Mine Grouting"

related to site stabilization and the foundation redesign.  (Pl. 56.1 ¶ 53; Breen Dec. Ex. C.)

## II.   LEGAL PRINCIPLES

### A.   <u>Summary Judgment Standard</u>

Summary judgment may not be granted unless a movant shows, based on admissible evidence in the record, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the burden of demonstrating "the absence of a genuine issue of material fact."  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  On summary judgment, the Court must "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor."  <u>Dickerson v. Napolitano</u>, 604 F.3d 732, 740 (2d Cir. 2010).  The Court's function on summary judgment is to determine whether there exist any genuine issues of material fact to be tried, not to resolve any factual disputes.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248-49 (1986).

Once the moving party asserts facts showing that the nonmoving party's claims cannot be sustained, the burden shifts to the nonmoving party to set out specific facts showing a genuine issue of material fact for trial.  <u>Wright v. Goord</u>, 554 F.3d 255, 266 (2d Cir. 2009) ("When a motion for summary judgment is properly supported by documents or other evidentiary materials, the party opposing summary judgment may not merely rest on the allegations or denials of his pleading; rather, his response, by affidavits or otherwise as provided in the Rule,

must set forth 'specific facts' demonstrating that there is 'a genuine issue for trial.'") (quoting Fed. R. Civ. P. 56(e)).  "In seeking to show that there is a genuine issue of material fact for trial, the nonmoving party cannot rely on mere allegations, denials, conjectures, or conclusory statements, but must present affirmative and specific evidence showing that there is a genuine issue for trial." <u>Price v. Cushman & Wakefield, Inc.</u>, 808 F. Supp. 2d 670, 685 (S.D.N.Y. 2011).

  B. <u>Insurance Policies</u>

  "The nature of a claims-made policy is that it protects the insured for claims made against it and reported to the insurer within the policy period or, if applicable, the extended reporting period." <u>Checkrite Ltd. v. Ill. Nat. Ins. Co.</u>, 95 F. Supp. 2d 180, 191 (S.D.N.Y. 2000).  "This is in contrast to an 'occurrence' policy, which protects the insured from liability for acts committed during the policy period regardless of when claims arise based on those acts." <u>Id.</u>

  Under New York law,[2] "[i]nsurance policies are, in essence, creatures of contract, and accordingly, subject to principles of contract interpretation." <u>In re Estates of Covert</u>, 761 N.E.2d 571, 576 (N.Y. 2001).  "[A]ny ambiguity in the terms of an insurance policy 'must be construed in favor of the insured and against the insurer.'" <u>Woodhams v. Allstate Fire & Cas. Co.</u>, 748 F. Supp. 2d 211, 218 (S.D.N.Y. 2010) (quoting <u>White v. Cont'l Cas. Co.</u>, 878 N.E.2d 1019, 1021 (N.Y. 2007)).  "On the other hand, 'contracts of insurance, like other contracts, are to be construed

---

[2] The parties agree that New York law applies to this dispute under the choice-of-law provision of the AXIS Policy.

according to the sense and meaning of the terms which the parties have used, and if they are clear and unambiguous the terms are to be taken and understood in their plain, ordinary and proper sense.'" Id. (quoting In re Estates of Covert, 761 N.E.2d at 576-77); see also Broad Street, LLC v. Gulf Ins. Co., 832 N.Y.S.2d 1, 4 (N.Y. App. Div. 1st Dep't 2006) (The "well-established principles governing the interpretation of insurance contracts [] provide that the unambiguous provisions of an insurance policy, as with any written contract, must be afforded their plain and ordinary meaning, and [] the interpretation of such provisions is a question of law for the court."). "[A]n insurer is entitled to have its contract of insurance enforced in accordance with its provisions and without a construction contrary to its express terms." Nat'l Cont'l Ins. Co. v. Countrywide Ins., 976 N.Y.S.2d 67, 68 (N.Y. App. Div. 1st Dep't 2013) (internal quotation marks omitted).

## III.   DISCUSSION

The fundamental issue before the Court is whether any triable issue of fact exists regarding Ballinger's ability to recover under the AXIS Policy for its liability to Pitt arising from problems at the Salk Hall Project.  AXIS argues that Ballinger's coverage claim fails in two ways: Either Ballinger's January 31, 2012, submission to Lexington was sufficient to trigger AXIS's prior-notice exclusion (even if insufficient to comply strictly with Lexington's formal notice requirements) and therefore to bar coverage under the AXIS Policy; or a principal of Ballinger had knowledge sufficient to create a reasonable expectation of a claim prior to the beginning of the AXIS Policy period such that coverage is precluded for that claim.  Pitt responds that if

Ballinger's January 31, 2012 submission was insufficient to trigger coverage by Lexington, it must be insufficient to preclude coverage by AXIS; according to Pitt, one of the two insurance carriers must have a coverage obligation. Pitt also argues that even if Ballinger had knowledge of an inevitable claim by Pitt against someone, it did not have knowledge of an inevitable claim against the architect, Ballinger, specifically.

Pitt is incorrect in its fundamental premise that one of the two insurance carriers must have a coverage obligation. It is certainly possible—and occurred here—that a party could fail to adequately comply with notice provisions required for one policy (here, the Lexington policy), and yet, because of the circumstances, not be covered under a second, subsequent policy (here, the AXIS policy). The Court agrees with AXIS that, on the facts here, any reasonable juror would have to conclude that a principal of Ballinger had a reasonable expectation of liability prior to February 1, 2012. This determination is sufficient to deny coverage under the AXIS Policy. The Court therefore does not reach the thornier issue of whether the January 31, 2012 notice to Lexington that this Court previously deemed inadequate to trigger coverage under the Lexington policy is, nonetheless, sufficient to trigger the notice exclusion under the AXIS Policy.

As set forth above, the AXIS Policy does not provide coverage if, prior to its effective date of February 1, 2012, a principal of the insured "had knowledge of any act, error, omission, situation, or event that could reasonably be expected to result in a Claim." (Pl. 56.1 ¶ 40.) The term "reasonably be expected" is not ambiguous; it

means that a claim will be covered if it was reasonably foreseeable under the facts known to the insured (or its principal) before commencement of the AXIS Policy coverage period.  See Broad Street, 832 N.Y.S.2d at 4.  AXIS has put forth sufficient facts showing that prior to February 1, 2012, French (an undisputed principal of Ballinger) believed that a claim arising from delays in the Salk Hall Project was "inevitable" and that there was a "possibility" that this inevitable claim would be against Ballinger because, inter alia, "there was likely to be a claim either asserted by the contractor against the owner or the owner against the contractor.  And my experience is, you know, that if that were to happen, it's quite possible that the architect could get dragged into that."  (Peiper Aff. Ex. K at 99-100.)  On these undisputed facts, any reasonable juror would have to conclude that the claim against Ballinger was reasonably foreseeable to French based on his knowledge of the Salk Hall Project "situation" prior to February 1, 2012.

AXIS also presented facts to show that the "Hillside Stabilization," "Mine Grouting" in the foundation system, and other problems cited by Pitt in its October 31, 2012 letter to Ballinger arose from the same circumstances that led Ballinger to submit the Notice of Claim to Lexington on January 31, 2012.  (Peiper Aff. Ex. K at 99-100) (French knew a delay claim was inevitable prior to the January 31, 2012 Notice of Claim because "it was quite likely that a delay claim could come from someone against someone resulting from one of two things: First and foremost, the decision that the university made to instruct us to redesign the foundation system .  . . . I also felt that it was possibly or likely, perhaps even reasonably likely, that he

university might assert a claim against the contractor who held up the hillside stabilization[.]").  Therefore, AXIS has met its burden to show that, on the undisputed facts before the Court on this motion, a principal of Ballinger knew of a "situation[] or event that reasonably be expected to result in a Claim," precluding coverage for the claim described in Pitt's letter of October 31, 2012.

Under the well-established framework of Celotex, once AXIS has met this burden, the burden shifts to Pitt to set out specific facts showing a genuine issue of material fact for trial.  Wright, 554 F.3d at 266.  Pitt has not carried that burden. Based on the undisputed facts before the Court on this motion, the potential claim of which Ballinger gave notice to AXIS on March 27, 2012, arose from the same set of circumstances—construction delays and problems relating to site stabilization and foundation redesign—that led Ballinger (according to French's deposition) to submit a Notice of Claim to Lexington on January 31, 2012 (See, e.g., Peiper Aff. Ex. K at 99-100.)  Pitt's opposition brief asserts that "AXIS has no basis to argue that Ballinger has knowledge of those same errors and omissions [discussed in the October 31, 2012 letter] in advance of" the AXIS Policy effective date.  (Mem. in Opp. at 13, ECF No. 123 at 19.)  But at this stage, when AXIS has proffered undisputed facts that Pitt's claim against Ballinger resulted from the same site-stabilization and foundation-redesign problems that led Ballinger to submit the January 31, 2012 Notice of Claim to Lexington, Pitt bears the burden of producing or pointing to triable issues of material fact.  Pitt does not point to any fact to support an inference that the circumstances described in its October 31, 2012 letter

11

are different from the circumstances that gave rise to Ballinger's January 31, 2012 Notice of Claim. Pitt's response is therefore insufficient to meet its burden of showing a triable issue of material fact.

Pitt also argues that French's statements could be construed to mean that French believed that a claim was inevitable, but that a reasonable jury could find that Ballinger did not have knowledge that a claim was inevitable against Ballinger, specifically. (Opp. Br. at 16.) This possibility is belied by the undisputed record before the Court on this motion. The AXIS Policy provides that coverage is precluded when an insured's principal has knowledge of a "situation" that creates a "reasonable expectation" of liability prior to the start of the coverage period. Even if French was not certain whether Ballinger or the contractor would be subject to the "inevitable" claim, the policy does not require certainty. It requires only a "reasonable expectation." Given French's statements that, prior to the AXIS policy effective date, he thought a delay was inevitable and that the "possibility" of a claim against Ballinger was strong enough that Ballinger had a "responsibility" to report it to its insurer, no reasonable juror could conclude that he did not have a "reasonable expectation" of a claim against Ballinger. In addition, Pitt's position here is belied by admissions elsewhere. In its briefing in support of summary judgment against Lexington, Pitt itself stated that "Ballinger knew, during the Lexington policy period, of circumstances arising from its Professional Services at the Salk Hall Project that were reasonably likely to result in a claim being filed against it." (ECF No. 93 at 3) (emphasis added). In another filing, Pitt also stated

12

that "[b]y January 2012, senior executives at Ballinger knew that the Salk Hall Project was progressing more slowly than had been anticipated[,]" that "a subcontractor had made statements that, in the experience and judgment of Ballinger's executives, suggested that the contractor could well assert a claim against Pitt[,]" and that "Ballinger was aware that Pitt, in turn, could assert that claim or a variant of it against Ballinger." (ECF No. 104 at 9-10.)

Pitt's fundamental problem is that, on the facts before the Court on the Lexington and AXIS motions, Ballinger did not respond to its knowledge of potential liability with the care and promptness required by terms of its insurance contracts. The result of Ballinger's failure to comply with the policy terms is that Pitt cannot shift its loss to either carrier. The Court's decision does not, as Pitt alleges, create an unfair forfeiture—Ballinger was never entitled to unconditional indemnification, even if it purchased two back-to-back policies. It must always comply with the policy's requirements. Here, it did not.

The Court's conclusion carries out the intention of the parties as expressed by the unambiguous terms of their contract. Broad Street, 832 N.Y.S.2d at 4. Moreover, it respects the basic structure of risk distribution in claims-made insurance coverage policies: The insured party with knowledge of potential liability is incentivized—indeed, required—to share that knowledge in a sufficiently timely, clear, and comprehensive manner with the party that has agreed to share in the risk of liability. To conclude otherwise would effectively hold AXIS to a strict-liability coverage standard for which it did not contract and for which it was not

13

paid.  See Nat'l Continental Ins. Co., 976 N.Y.S.2d at 68.  Pitt is bound by the terms and conditions of Ballinger's contracts, and the contractual language controls.  In re Estates of Covert, 761 N.E.2d at 576.

IV.     CONCLUSION

For the reasons set forth above, AXIS's motion for summary judgment is GRANTED.  The Clerk of Court is directed to terminate the motion at ECF No. 119 and to terminate this action.


SO ORDERED.

Dated:        New York, New York
              December 8, 2016

_____
              KATHERINE B. FORREST
              United States District Judge